```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
FUJIFILM NORTH AMERICA                                      :
CORPORATION,                                                :
                                                            :   **MEMORANDUM**
                                          Plaintiff,        :   **DECISION AND ORDER**
                                                            :
                      - against -                           :   16 Civ. 5677 (BMC)
                                                            :
GELESHMALL ENTERPRISES LLC, *et al.*,                       :
                                                            :
                                          Defendant.        :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Before me is the motion of plaintiff FUJIFILM North America Corporation ("FUJI") to dismiss the counterclaims of defendant Geleshmall Enterprises LLC ("Geleshmall") for breach of contract and breach of the covenant of good faith and fair dealing. FUJI initiated the main action by filing suit against approximately 15 defendants, as well as unnamed XYZ companies, for violations of the Lanham Act and state law through the alleged sale of gray market FUJI and INSTAX products (the "FUJI Gray Market Products").[1] Geleshmall, previously a contractually-bound distributor of Genuine U.S. FUJI Products, alleged in its counterclaims that FUJI had breached the distribution agreement under which the parties had previously operated. FUJI argues that Geleshmall's counterclaims are subject to an arbitration clause that requires the Court to dismiss (or stay) the counterclaims pending arbitration. Geleshmall cross-moved to compel arbitration as to the gray market claims. For the following reasons, FUJI's motion is granted in part and denied in part, and Geleshmall's cross-motion is denied.

---

[1] INSTAX is another trademark belonging to FUJI. The Court will refer to genuine FUJI and INSTAX products, designated for U.S. distribution, collectively as the "Genuine U.S. FUJI Products" and the gray market FUJI and INSTAX products collectively as the "FUJI Gray Market Products."

## BACKGROUND

### I. FUJI's Amended Complaint

FUJI is a New York corporation with its principal place of business in New York. It alleges that, at least as early as June 2016, it learned that the named defendants, including Geleshmall, were distributing and selling FUJI Gray Market Products to U.S. consumers in brick-and-mortar stores and on the internet. Gray market products are generally defined as goods that the trademark holder has authorized for manufacture and sale outside of the United States, but which are legally purchased outside the United States from authorized distributors and sold within the United States without the trademark holder's permission. Under the Lanham Act, the sale of gray market products is prohibited under certain circumstances. FUJI alleges that the FUJI Gray Market Products are physically and materially different from Genuine U.S. FUJI Products, which are authorized for United States distribution and sale in numerous ways.

FUJI alleges that the gray market sales are likely to result in consumer confusion, lost profits, and interference with FUJI's quality control efforts. Moreover, FUJI alleges that defendants' conduct also results in substantial reputational harm to FUJI, where, for example, a consumer of a FUJI Gray Market Product has no warranty recourse in the United States because his product is not a Genuine U.S. FUJI Product, which are the only products that have valid U.S. warranties.

### II. Geleshmall's Counterclaims

Geleshmall is a California LLC and its sole member is a California citizen. Geleshmall had previously purchased Genuine U.S. FUJI Products from FUJI prior to the alleged 2016 conduct outlined in FUJI's amended complaint. Specifically, beginning in 2010, Geleshmall began to buy limited quantities of certain Genuine U.S. FUJI Products from FUJI. This informal

relationship was not memorialized in any contract. It continued until approximately August 2011, at which point FUJI approached Geleshmall about the pricing of those Genuine U.S. FUJI Products. The parties negotiated pricing terms, and for the remainder of 2011 and 2012, Geleshmall bought as many Genuine U.S. FUJI Products as it could. However, FUJI could not always fill the orders that Geleshmall placed.

In 2013, FUJI again approached Geleshmall regarding its distributor relationship, explaining that, in order to ensure adequate product delivery of Genuine U.S. FUJI Products, FUJI and Geleshmall should enter into a contractual agreement with sales forecasts. Under this new agreement, FUJI would sell Genuine U.S. FUJI Products to Geleshmall for certain prices per pack or per case, and as a result, if Geleshmall met certain buying minimums, it would be eligible for rebates on those products.

The agreement between FUJI and Geleshmall went into effect in approximately November 2013 and was to continue until the end of 2014 (the "2014 Agreement"). The contract required Geleshmall to purchase a minimum of $4.2 million worth of Genuine U.S. FUJI Products.

Three paragraphs from the 2014 Agreement are important here:

¶ 1: "[Geleshmall] Appointment and Obligations. . . . [Geleshmall] will purchase all of its requirements of the Instax Products from FUJIFILM. . . . [Geleshmall] will not knowingly sell, offer to sell, promote, market, or transfer the Instax Products outside the [United States]. . . . [Geleshmall] and its agents will comply with applicable federal, state, local and other government laws and regulations relating to its resale of the Instax Products and its business operations as applicable to the Products."

\*   \*   \*

¶ 7: "Indemnities. [Geleshmall] shall indemnify, defend [and] hold harmless ("Indemnify") FUJIFILM and its affiliates from and against any damages, losses, actions, liabilities and costs . . . incurred or arising in connection with (i) any use of the Instax Products which is inconsistent with the uses permitted hereunder; (ii) any advertising, promotion, representations or warranties made by [Geleshmall]

3

relating to the Instax Products which are not wholly consistent with the Instax Product documentation and applicable Instax Product warranties as expressly stated hereunder; (iii) [Geleshmall's] material breach of this Agreement or its actual or alleged breach of its obligations under rules or regulations; (iv) [Geleshmall's] business activities and operations; and (v) otherwise the actual or alleged acts or omissions of [Geleshmall], its employees, agents, customers, business partners, or contractors directly or indirectly relating to the Instax Products.

Subject to the exclusive remedy and liability limitation provisions thereof, FUJIFILM shall Indemnify [Geleshmall] and its affiliates from and against any and all Costs incurred or arising in connection with (i) FUJIFILM's material breach of this Agreement or of its obligations under applicable laws, rules or regulations . . . ."

\*       \*       \*

¶ 10: "<u>Miscellaneous</u>. "All claims and disputes arising out of / pertaining to this Agreement shall be resolved by way of arbitration before the American Arbitration Association and the rules of such association applicable to commercial disputes. Such remedy shall be sole [sic] and exclusive remedy of the parties."

FUJI was unable to fill all of the orders that Geleshmall placed pursuant to the 2014 Agreement. Regarding the orders that FUJI was able to fill, Geleshmall accepted and paid for all deliveries. Geleshmall continued to place purchase orders with FUJI so it could try to meet the minimum purchase requirements of the 2014 Agreement. Geleshmall made repeated requests to FUJI regarding the unfilled purchase orders, and FUJI responded with assurances like, "we are working on it," or other comments indicating that shipments would be forthcoming.

In the end, during the term of the 2014 Agreement, FUJI did not fill approximately $1.8 million of Geleshmall orders. By not filling these orders, FUJI materially breached the 2014 Agreement.

# DISCUSSION

## I. FUJI's Motion to Dismiss the Counterclaims

FUJI argues that Geleshmall's counterclaims fall within the arbitration clause of the 2014 Agreement and that the arbitration clause requires this Court to dismiss the counterclaims while the parties pursue arbitration. Before the Court reaches these issues, a discussion of subject matter jurisdiction is necessary.

### A. Subject Matter Jurisdiction

FUJI's claims against all defendants are based on the Lanham Act, and thus, obviously, there is federal question jurisdiction over those claims. See 28 U.S.C. § 1331. Geleshmall's counterclaims are not based on federal law and thus are not brought pursuant to the Court's federal question jurisdiction. In a footnote, FUJI contends that there is no diversity jurisdiction because although FUJI and Geleshmall are diverse, FUJI and some of the other defendants share New York citizenship. FUJI recognizes that this issue is largely academic because if there is a jurisdictional defect, this Court can cure it simply be severing the claims and counterclaims between FUJI and Geleshmall and proceeding separately with that case. See, e.g., Fed. R. Civ. P. 21, 42. FUJI requested, however, that if the Court does not sever these claims, it should be allowed to submit supplemental briefing on the jurisdictional issue.

There is no reason to sever the claims nor to engage in further briefing regarding subject matter jurisdiction. The counterclaims need not be severed because diversity jurisdiction exists as to Geleshmall's counterclaims against FUJI.

The first question is whether Geleshmall's counterclaims are compulsory or permissive. A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over

whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). A compulsory counterclaim "does not require an absolute identity of factual backgrounds, [but] the essential facts of the claims must be so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir. 2004) (internal quotation marks, brackets, and citations omitted). "[N]o independent basis of federal jurisdiction is needed for the court to adjudicate the ancillary issues . . . raised [by a compulsory counterclaim], if the main claim itself presents a colorable federal issue." Scott v. Long Island Sav. Bank, F.S.B., 937 F.2d 738, 742 (2d Cir. 1991) (internal quotation marks omitted). Thus, if Geleshmall's contract counterclaims are compulsory, then the Court has ancillary jurisdiction over them and does not need an independent basis for jurisdiction.

If the counterclaims are not compulsory, but instead permissive, then they "must be maintainable in a federal district court on some jurisdictional basis that would have sufficed had it been brought in a separate action." Jones, 358 F.3d at 210. Here, Geleshmall's counterclaims are permissive, not compulsory, as the "essential facts" of the gray market claims do not meet the requirement in Jones that "the claims must be so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Jones, 358 F.3d at 209.

From timing and substance perspectives, discovery into the Lanham Act violations is separate from the discovery necessary for the counterclaims. Geleshmall alleges that the breaches outlined in the counterclaims occurred during the pendency of the 2014 Agreement, which ran from 2013 to 2014, whereas FUJI's Lanham Act claims arise from conduct beginning

6

in approximately June 2016.  For that reason, the discovery necessary to the main action claims and the counterclaims would not substantially overlap.

That conclusion does not change when considering Geleshmall's defense that FUJI had previously acquiesced or encouraged Geleshmall's sale of FUJI Gray Market Products.  The questions of whether and to what extent Geleshmall sold FUJI Gray Market Products before June 2016 as a continuation of conduct permitted by FUJI in 2014 (as a result of FUJI's alleged breach of the 2014 Agreement) are separate inquiries.  Accordingly, the communications between the parties as to the 2014 Agreement, FUJI's alleged failure to fill orders, and the availability of remedies for that failure are separate from the gray market claims, making Geleshmall's counterclaims permissive.

Because the counterclaims are permissive, the Court must then determine whether there is an independent basis to assert federal jurisdiction.  Here, there is.  "It is axiomatic that federal courts have diversity jurisdiction only when there is complete diversity between the parties – that is, when all plaintiffs are citizens of different states from all defendants."  U.S. Underwriters Ins. Co. v. Ziering, No. 06-CV-1130, 2010 WL 3419666, at *6 (E.D.N.Y. Aug. 27, 2010).  "In other words, if any plaintiff shares citizenship of the same state as any defendant, complete diversity does not exist and diversity jurisdiction is lacking."  Id.

When applied to counterclaims, the analysis is limited to the counterclaim-plaintiff and the counterclaim-defendant.  The Third Circuit addressed this issue on similar facts in Barefoot Architect, Inc. v. Bunge, 632 F.3d 822 (3d Cir. 2011).  There, after the district court dismissed plaintiff's federal copyright claim, it declined supplemental jurisdiction over the counterclaims, which were based on state (territorial) law.  The Third Circuit reversed because there was diversity of citizenship between the counterclaiming defendant and the plaintiff – even though

some co-defendants of the co-defendants of the counterclaiming defendant shared the plaintiff's citizenship. Because those co-defendants were not involved in the counterclaim, there citizenship was immaterial. "It is unimportant for this purpose that Roberts and Springline (both Virgin Islands citizens) are listed in the case caption (thus apparently destroying the complete diversity required by Strawbridge v. Curtiss because we are focused on whether jurisdiction exists with respect to the individual counterclaim, rather than with respect to the case as a whole." Id. at 836 (citation omitted). See also id. U.S. Underwriters Ins. Co. v. Ziering (analyzing the counterclaims for diversity as between one defendant-turned-counterclaim-plaintiff against the counterclaim-defendants); SiCap Indus., LLC v. Carpenter, 501 F. Supp. 2d 335, 341 (N.D.N.Y. 2007) (similarly analyzing diversity as between one defendant-turned-counterclaim-plaintiff and the counterclaim-defendants only); Siteworks Contracting Corp. v. W. Sur. Co., 461 F. Supp. 2d 205, 208 (S.D.N.Y. 2006) (determining there was no diversity jurisdiction where counterclaim-plaintiff and counterclaim-defendant were both New York citizens); Chase Manhattan Bank, N.A. v. Aldridge, 906 F. Supp. 870, 876 (S.D.N.Y. 1995) (finding no jurisdiction because "plaintiffs on the counterclaim[] and . . . defendants on the counterclaim[] are not completely diverse").

Here, Geleshmall is a citizen of California and FUJI is a citizen of New York. Geleshmall names no other defendants in its counterclaims. Thus, there is complete diversity. There is also no question about the amount in controversy as Geleshmall seeks damages for the alleged failure to fill $1.8 million worth of orders.

To support its argument, FUJI cites, among other things, the complete diversity rule as pronounced by Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806). The venerable Strawbridge rule requires complete diversity as to the complaint when a plaintiff relies on

8

diversity jurisdiction. It says nothing about the counterclaims of one of multiple defendants. The Court is unaware of any cases that support FUJI's position, and those cited above reject it.

Consistent with all of these principles, the Court has diversity jurisdiction over Geleshmall's counterclaims.

### B. Arbitration of the Counterclaims

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has held on several occasions that there is a strong federal policy favoring arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339-40 (2011). Indeed, the FAA "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997) (internal quotation marks omitted).

The terms of the 2014 Agreement compel me to conclude that the breach of contract counterclaims fall squarely within the arbitration clause in the 2014 Agreement. Specifically, the 2014 Agreement states that "[a]ll claims and disputes arising out of / pertaining to this Agreement shall be resolved by way of arbitration before the American Arbitration Association." There is no ambiguity in the language and no opposition by Geleshmall; thus, the counterclaims are subject to arbitration.

The next question is how the Court should handle the counterclaims as they exist in this litigation, *i.e.*, whether they should be stayed or dismissed. Once a court determines a dispute is

covered by an arbitration agreement, that dispute may be stayed to allow arbitration. See 9 U.S.C. § 3; Carvant Fin. LLC v. Autoguard Advantage Corp., 958 F. Supp. 2d 390, 398-99 (E.D.N.Y. 2013) (ordering stay of proceedings and compelling arbitration). When an entire action is subject to arbitration, the Second Circuit had previously determined that district courts have discretion to dismiss the action. See Salim Oleochemicals v. M/V SHROPSHIRE, 278 F.3d 90 (2d Cir. 2002), abrogated by Katz v. Cellco P'ship, 794 F.3d 341 (2d Cir. 2015). Katz, however, abrogated that previous holding, recognizing that "the FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." 794 F.3d at 347.

Though the issue before me does not implicate the whole action, the Second Circuit's reasoning in Katz does not apply with any less force here. The Second Circuit was clear to limit its holding to actions where all claims have been referred to arbitration, see id. at 345 n.6, but the language in the FAA fairly captures cases such as this one where all of the counterclaims are referred to arbitration and a party has sought a stay. Specifically, the FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the *issue* involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). Here, the issue is the arbitrability of the counterclaims, and Geleshmall has in fact moved to stay the counterclaims, rather than dismiss them. A stay of the counterclaims is thus mandatory.

A stay of the counterclaims better effects the policy behind arbitration. "A decision to dismiss has implications for the speed with which the arbitration of the dispute may begin

10

because a dismissal is reviewable by an appellate court under Section 16(a)(3) of the FAA; a stay, however, is an unappealable interlocutory order under Section 16(b) of the FAA." Pick Quick Food, Inc. v. United Food & Commercial Workers Local 342, 952 F. Supp. 2d 494, 506 (E.D.N.Y. 2013). "Staying the action is, therefore, more likely to allow the matter to proceed to arbitration in an expeditious manner." Id. These considerations are an added benefit to what is really a *fait accompli* dictated by the FAA. Therefore, FUJI's motion to dismiss the counterclaims is granted in part and denied in part. The counterclaims are stayed, and if Geleshmall wants to pursue them, it is going to have to commence arbitration within 30 days, failing which they will be dismissed.

## II. Geleshmall's Motion to Compel Arbitration on the Gray Market Claims

Geleshmall argues that if the Court finds that the counterclaims are subject to arbitration, then FUJI should also be compelled to arbitrate its gray market claims because the arbitration clause in the 2014 Agreement is broad enough to encompass FUJI's gray market claims. I disagree.

In determining whether to compel arbitration, a court must decide: "(1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbitration agreement." ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002). In making this determination, a court will abide by the strong policy favoring arbitration and will "construe arbitration clauses as broadly as possible," resolving "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011). This presumption is stronger when the agreement contains a "broad" arbitration clause. See Collins & Aikman Prods. Co., 58 F.3d 16, (2d Cir. 1995) ("The clause in this case, submitting to arbitration [a]ny

11

claim or controversy arising out of or relating to th[e] agreement, is the paradigm of a broad clause."). In the case of a broad arbitration clause, a court must "compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d at 128 (internal quotation marks omitted).

Where, as here, the arbitration clause is broad, there is a presumption of arbitrability. The presumption causes the burden to shift to "the party resisting arbitration to demonstrate that the disputed issue is collateral." ACE Capital, 307 F.3d at 35. Even if the dispute is collateral, arbitration of that issue may be nevertheless required where the dispute implicates "issues of contract construction or the parties' rights and obligations under it." Collins, 58 F.3d at 23. Therefore, FUJI bears the burden in showing that the claim is not subject to arbitration.

In determining whether a particular claim falls within the scope of an arbitration agreement, a court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987). Over the years, there have been different rules announced related to this inquiry: "some of these rules ask, for example, whether the factual allegations 'touch matters' governed by the parties' contracts; whether the allegations 'arise from' contract performance; whether they are 'integrally linked' to the contractual relation; or whether they somehow 'pertain to' it." Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 28 (2d Cir. 1995) (internal citations omitted). "None of these formulations itself yields a principled way of here deciding whether these claims should be sent to arbitration." Id. Because there is no bright line rule, courts are guided in the same way that they are guided in ruling on any contractual matter – the "main concern in deciding the scope of arbitration agreements is to faithfully reflect the

reasonable expectations of those who commit themselves to be bound by them." Id. Thus, the key question is whether Geleshmall's arguments in favor of arbitration "reflect the reasonable expectations of those who commit themselves to be bound by them." Leadertex, 67 F.3d at 28.

Geleshmall first argues that the 2014 Agreement implicates resolution of federal claims because it states that, "[Geleshmall] and its agents will comply with all applicable federal, state, local and other governmental law and regulations." According to Geleshmall, because the gray market claims arise out of Geleshmall's alleged failure to comply with applicable federal law, *i.e.*, the Lanham Act, the broad arbitration provision applies to the gray market claims, as well. See Lapina v. Men Women N.Y. Model Mgmt., Inc., 86 F. Supp. 3d 277, 288 (S.D.N.Y. 2015) (holding Lanham Act claims can be the subject of arbitration).

Second, Geleshmall argues that the arbitration clause covers the gray market claims because FUJI's gray market claims are simply another way of saying that Geleshmall breached the 2014 Agreement by filling its requirements for FUJI products from suppliers other than FUJI. Third, Geleshmall highlights that the contract between the parties contains an indemnity clause, the scope of which rights and obligations therein must be decided by an arbitrator. Fourth, Geleshmall argues that FUJI's attempt to cabin its gray market claims to June 2016 and forward is specious given that a "party's obligation under an arbitration clause survives the expiration of an agreement when the post-expiration action infringes a right that accrued or vested under the agreement." Kuklachev v. Gelfman, 600 F. Supp. 2d 437, 459 n.9 (E.D.N.Y. 2009). Geleshmall argues that FUJI's Lanham Act rights vested in the 2014 Agreement's requirement that Geleshmall comply with federal law and fill its distribution requirements through FUJI directly.

Even reading the arbitration clause broadly, Geleshmall's arguments torture the words in the 2014 Agreement. The parties did not agree to arbitrate gray market claims. Although the

13

burden is on FUJI to show that the claims are not subject to arbitration despite the broad arbitration clause, FUJI has met that burden because the gray market claims exist separate and apart from the conduct that is the subject of the 2014 Agreement.

Although the 2014 Agreement includes a clause that Geleshmall must comport itself consistent with all laws, including federal laws, that is not enough to bind FUJI into arbitrating its gray market claims. First, the 2014 Agreement is a distribution agreement. Paragraph 1, which lists the obligations of the parties, deals only with Geleshmall's responsibilities as they relate to the Genuine U.S. FUJI Products that FUJI supplied.

Geleshmall contends that the 2014 Agreement does not define the products at issue and that the products are not necessarily the Genuine U.S. FUJI Products. I again disagree. Paragraph 1 clearly states that the products at issue are the ones (1) "labeled and packaged for resale within the [United States]," (2) as supplied by FUJI, and (3) "intended only for resale to consumers within and subject to the jurisdiction of the [United States]." The 2014 Agreement is clear that products labeled for the United States and supplied directly by FUJI for the United States are Genuine U.S. FUJI Products. To read it any differently would destroy the meaning of most of paragraph 1.

Significantly, paragraph 1 prohibits Geleshmall from selling or promoting the Genuine U.S. FUJI Products outside of the United States, which is to say, the obligations paragraph contemplated and included a prohibition only on Geleshmall's sale of U.S. products abroad. That is the reverse of FUJI's gray market claim here. Had either party wanted to include a clause addressing the present scenario, *i.e.*, Geleshmall's distribution of non-U.S. products in the United States, it surely could have. But the 2014 Agreement does not contain such a provision, and the express inclusion of the former implies the exclusion of the latter. See, e.g., Mexican Hass

14

Avocado Importers Ass'n v. Preston/Tully Grp. Inc., 838 F. Supp. 2d 89, 96 (E.D.N.Y. 2012) (citing Two Guys from Harrison–N.Y., Inc. v. S.F.R. Realty Assocs., 63 N.Y.2d 396, 403-04, 482 N.Y.S.2d 465, 468 (1984).

The important point is that FUJI's gray market claims exist outside of the 2014 Agreement. If that Agreement never existed, FUJI would have the same claims it has now under the Lanham Act. This fact distinguishes the cases that Geleshmall has proffered in favor of its position because, in many of those cases, the disputed claims "could not have arisen had there not been a prior contract between the parties." Kuklachev, 600 F. Supp. 2d at 461. And this is true despite Geleshmall's attempt to relabel FUJI's gray market claims as breach of contract claims where the breach is Geleshmall using a different supplier. If Geleshmall purchased Genuine U.S. FUJI Products from another licensed supplier, then that breach claim would exist, but where the issue is a Lanham Act violation, that claim exists on its own legs.

Finally, Geleshmall's argument that the gray market claims survive the expiration of the 2014 Agreement and are thus subject to arbitration need not be considered at length. Claims survive when those claims are the result of rights that accrued and vested under the expired contract. Having found that FUJI's claims exist without reference to the 2014 Agreement, it is immaterial as to which, if any, rights survive upon expiration of that agreement.

First, many of the cases that recognize a post-expiration breach deal with breaches of collective bargaining agreements, where there is no question it is the agreement wherein the right accrued and vested. See, e.g., CPR (USA) Inc. v. Spray, 187 F.3d 245, 255 (2d Cir. 1999), abrogated on other grounds by Accenture LLP v. Spreng, 647 F.3d 72, 76 (2d Cir. 2011).

Second, those cases that have recognized the arbitrability of certain federal statutory claims occurred in circumstances where the alleged federal claims are part and parcel to the

15

agreement. See, e.g., Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999) (finding antitrust claims under the Sherman Act subject to arbitration where the claims are predicated on the allegation that the agreement reached between the parties is itself an anticompetitive tool); Lapina, 86 F. Supp. 3d at 286 (compelling arbitration where the Lanham Act trademark dilution and unfair competition claims "also involve the 2013 Agreement, inasmuch as all of the claims against [the model management agency] stem from its purported actions in granting a license for the use of [the fashion model's] image and otherwise failing to provide proper advice and guidance to her, as required by the 2013 Agreement").

Thus, Geleshmall's motion to compel arbitration of the gray markets claim is denied. Also denied is Geleshmall's motion that the Court sever FUJI's gray market complaint against Geleshmall and stay the complaint if the Court does not compel arbitration. The specter of possible inconsistencies between the results of arbitration of the counterclaims and the findings of this Court are too remote and improbable to support a stay.

## CONCLUSION

FUJI's motion [85] is granted in part and denied in part, and Geleshmall's motion [95] is denied. Geleshmall's counterclaims are stayed for 30 days so that Geleshmall can commence an arbitration, upon which the stay will continue. If Geleshmall does not commence an arbitration on its counterclaims within that time, the counterclaims will be dismissed.

**SO ORDERED.**

                                                        U.S.D.J.

Dated: Brooklyn, New York
       March 9, 2017