UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
FUJIFILM NORTH AMERICA                              :
CORPORATION,                                        :
                                                    :
                    Plaintiff,                      :  **MEMORANDUM**
                                                    :  **DECISION AND ORDER**
         - against -                                :
                                                    :  16-cv-5677 (BMC)
BIG VALUE INC., *et al.*,                           :
                                                    :
                    Defendants.                     :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff FUJIFILM North America Corporation has moved *in limine* to preclude defendants from referring to or introducing certain arguments or evidence at trial. Plaintiff has also moved *in limine* to exclude the opinions and testimony of BFG Defendants' expert under Federal Rule of Evidence 702. For the following reasons, plaintiff's motions are granted in whole or in part.

I. **Plaintiff's Motion *in Limine* to Preclude All Defendants from Referring to Their Profits as Benefitting Non-Party FUJIFILM Entities (No. 1)**

Plaintiff asks the Court to preclude all defendants from discussing or introducing evidence about their profits benefitting plaintiff's parent company or any other non-party FUJIFILM entity. Defendants Big Value Inc., F&E Trading LLC, and Gadget Circuit LLC (collectively, the "BFG Defendants") do not oppose the motion. Defendants Goldex Limited and Tri-State Camera Exch. Inc. (who refer to themselves as the "FLG Defendants") oppose the motion on the ground that any profits benefitting plaintiff's parent company are relevant to their first sale/exhaustion defense.

The first sale/exhaustion doctrine generally prohibits a trademark holder from recovering for unauthorized resales of goods as long as the goods are genuine. See Polymer Tech. Corp. v. Mimran, 975 F.2d 58, 61 (2d Cir. 1992). But if goods intended to be sold in another jurisdiction are materially different than domestic goods, they are not "genuine" within the meaning of the first sale/exhaustion doctrine. See Original Appalachian Artworks, Inc. v. Granada Elecs., Inc., 816 F.2d 68, 72-73 (2d Cir. 1987); Dan-Foam A/S v. Brand Named Beds, LLC, 500 F. Supp. 2d 296, 317 (S.D.N.Y. 2007); see also Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 638 (1st Cir. 1992) ("[A]n unauthorized importation may well turn an otherwise 'genuine' product into a 'counterfeit' one.").

Whether the gray-market FUJIFILM cameras at issue in this case are materially different from those authorized to be sold in the United States is a key disputed issue. If plaintiff cannot prove that the gray-market cameras are materially different from its authorized cameras, its Lanham Act claims will fail, regardless of whether its parent company derived some financial benefit from the sale of unauthorized cameras so any benefit from profits is not relevant to plaintiff's case or defendant's ability to rebut it. The Court agrees with plaintiff that, to the extent this evidence is relevant at all, any probative value it has would be substantially outweighed by the risk of the jury confusing the issues. Plaintiff's first motion *in limine* is therefore granted.

II.  **Plaintiff's Motion *in Limine* To Preclude Evidence or Testimony About BFG Defendants' Expenses (No. 2) and Related Daubert Motion**

Plaintiff moves under Federal Rule of Civil Procedure 37 to preclude BFG Defendants from arguing or offering any testimony or other evidence of their expenses from the gray-market cameras other than the cost of those cameras in light of BFG Defendants' failure to respond to plaintiff's discovery requests on these topics. Plaintiff argues that BFG Defendants' production

in response to plaintiff's request included only: six purchase orders (which relate to the cost of the goods) and a one-page summary spreadsheet purporting to summarize defendants' operating expenses attributable to the FUJIFILM gray-market cameras. The spreadsheet lists categories of business expenses including salaries, advertising, bank charges, business travel & auto expenses, computer maintenance, employee benefits, insurance, office expenses, professional fees, rent, repairs, shipping, and utilities & miscellaneous.

Plaintiff argues that the Court should preclude BFG Defendants from arguing or producing evidence of these "disputed deductions" because they refused to produce any of the underlying documents to substantiate the figures in the spreadsheet and none of BFG Defendants' witnesses, including Roy Raphaeli, its witness designated under Federal Rule of Civil Procedure 30(b)(6), could explain how the spreadsheet's figures were calculated or how the allocations were made. (BFG Defendants purported to allocate the amount of their general operating expenses attributable to FUJIFILM gray-market goods by multiplying their total annual expenses by the percentage of their revenue FUJIFILM gray-market goods represented. Plaintiff does not challenge this allocation methodology in the abstract, but instead challenges its application here where BFG Defendants have not provided any data to support the final figure or explained what amounts were used to calculate it and why.)

Plaintiff's Daubert motion is related: Plaintiff moves to exclude testimony by BFG Defendants' expert, Dr. Elliot Fishman, whose expert report is based on the same spreadsheet that is the only evidence BFG Defendants produced to support their non-cost-of-goods allocated expenses. Plaintiff argues that in reaching conclusions based on that spreadsheet, Dr. Fishman improperly relies on unreliable evidence. Plaintiff also argues that his opinion that the "perfectly competitive market" theory explains why BFG Defendants' profits were so low is unreliable.

3

### A. *Motion in Limine No. 2*

Under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, a district court may sanction a party for failure to obey a discovery order by, among other things, directing that certain facts be deemed established and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."

Under Rule 37(c), a "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." "[A] 'bad-faith' violation of the Rule 26 is not required in order to exclude evidence pursuant to Rule 37, [but] it can be taken into account as part of the party's explanation for its failure to comply." Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006).

Plaintiff's motion provides a detailed summary of its requests for information related to BFG Defendants' expenses, beginning with its First Requests for Production (served on January 18, 2017), continuing through its motion to compel, which the Court granted on October 19, 2017, its Second Requests for Production (served on September 6, 2017), and its November 22, 2017 letter addressing the summary spreadsheet.[1] As plaintiff notes, BFG Defendants served a certificate of compliance on plaintiff on October 25, 2017, which stated that they had "served on plaintiff all responsive documents ordered to be produced by the Court in this Order," but BFG Defendants never produced any documents substantiating the summary spreadsheet or any other evidence to support the proposed amounts for the non-cost-of-goods expenses in the spreadsheet.

---

[1] Plaintiff's motion also refers to its December 14, 2017 motion to compel, which the Court granted, but that motion did not cover the materials discussed here.

Plaintiff argues that the Court should sanction BFG Defendants under Rule 37(b) for failing to comply with the Court's discovery or, in the alternative, BFG Defendants should be precluded from relying on the summary spreadsheet under Rule 37(c) because they neither produced the underlying documents nor provided a witness who could explain the spreadsheet.

It is undisputed that BFG Defendants never produced any of the underlying documents and plaintiff's argument about the 30(b)(6) witness is supported by the deposition transcript. BFG Defendants' designated witness testified that the spreadsheet was based on information provided to him by the "head of accounting," that it was created because "[a]ttorneys asked for it," and that his only role in the spreadsheet's creation was "[m]aking a pivot table and putting down all of the information, laying it out in Excel" (he testified to this last point at least twice during the deposition).[2]

BFG Defendants have produced no compelling arguments in opposition to plaintiff's second motion, and, on this record, it is hard to see how they could. Their first argument – that plaintiff did not move to compel production of the documents it claims Dr. Fishman relied upon – is frankly astounding given the discovery history described above and on the transcript of Dr. Fishman's deposition.

In an email dated February 23, 2018, counsel for plaintiff asked BFG Defendants for (among other things), "audited/reviewed financials for parent company on consolidated basis, 2013-2016" and "any additional details on SG&A numbers, broken down by category and year." (SG&A stands for "selling, general and administrative expenses" and refers to that portion of a company's income statement that lists all of a company's direct and indirect expenses).

---

[2] This information was redacted from plaintiff's publicly filed brief in support of its motion *in limine*. The Court sees no reason why these particular responses are sensitive business information or otherwise warrant sealing.

One month later, during his deposition on March 23, 2018, Dr. Fishman stated that he had reviewed BFG Defendants' SG&A in an annual report that covered 2013 to 2016.[3] In response to a question from plaintiff's counsel about why he had not disclosed that annual report as a source consulted in his expert report, Dr. Fishman replied that "[i]t was an oversight and they were not used for any of my rebuttal." Plaintiff's counsel immediately asked counsel for BFG Defendants to produce that SG&A:

> They were called for. Just on the record, we asked for that information in discovery months ago. There is absolutely no reason why it should have not been produced as part of regular fact discovery in this case. They certainly should have been disclosed and produced in connection with expert discovery in this case. So the sooner you can get those materials to us the better.

Counsel for BFG Defendants replied "certainly." But BFG Defendants never produced the SG&A or any other reliable documents to support their "allocated costs" figure besides the summary spreadsheet.[4]

A discovery sanction against BFG Defendants under Rule 37(b)(2)(A)(ii) is appropriate here. As described above, plaintiff brought this deficiency to BFG Defendants' attention repeatedly and they refused to rectify it. This Court ordered them to comply with plaintiff's requests on October 19, 2017 and the record makes clear that they did not, even though they sent plaintiff a certificate of compliance. And BFG

---

[3] Later in the same deposition, Dr. Fishman stated that the SG&A only covered 2014 to 2016, but this distinction is immaterial; the point is BFG Defendants never produced it to plaintiff.

[4] Dr. Fishman mentioned three other documents during his deposition: (1) a "depreciation worksheet"; (2) a "workbook"; and (3) his own handwritten notes from his visit to BFG Defendants' site. As to the first, Dr. Fishman testified in his deposition that he only relied on the worksheet in the sense that he concluded from it that depreciation was an insignificant expense. Therefore, to the extent the depreciation worksheet has any probative value, it would not support BFG Defendants' position. As to the "workbook" (a single page), which listed percentages next to descriptions such as "Salaries," "Commissions," "Advertising," and "Rent," Dr. Fishman testified that it "wasn't an official company document" and did not know whether the numbers at the top, which he thought were revenue figures, represented BFG Defendants' revenue for FUJI products generally or only gray-market FUJI products, or which year's revenue they reflected. He did not know how any of the percentages listed were calculated. Finally, as to Dr. Fishman's handwritten notes, they do not purport to list any cost allocation information.

Defendants were certainly on notice that Rule 37 sanctions were a possibility: In both orders granting plaintiff's motions to compel against them, the Court reminded BFG Defendants that "failure to comply [with their discovery obligations] may result in evidentiary or additional monetary sanctions under F.R.C.P. 37, including striking their answers and entering default judgments." In light of their failure to comply with this Court's October 19, 2017 discovery order, BFG Defendants are prohibited from introducing any evidence to support the disputed deductions (the allocated expenses), except for the cost of goods sold.

Even if a sanction under Rule 37(b) were inappropriate, there is sufficient evidence under Rule 37(c) to preclude BFG Defendants from using the spreadsheet as to the disputed deductions. Compare Kam Hing Enters., Inc. v. Wal-Mart Stores, Inc., 359 F. App'x 235, 238 (2d Cir. 2010) (holding that district court did not abuse its discretion by granting motion *in limine* to preclude party from introducing summary spreadsheets at trial when it failed to produce the underlying data) with Lee Valley Tools, Ltd. v. Indus. Blade Co., 288 F.R.D. 254, 260-61 (W.D.N.Y. 2013) (declining to preclude financial summaries under Rule 37(c) where party failed to timely produce underlying data but subsequently produced it "shortly after the discovery deadline and well in advance of any trial").

Nor would it be appropriate, as BFG Defendants argue, for BFG Defendants' CEO or another business owner to testify to these facts. Defendants' designated witness, Raphaeli, testified at his deposition that he did not know the source of the numbers listed in the summary spreadsheet and had no substantive role in putting it together. BFG

7

Defendants cannot produce at trial a new witness to testify to facts that the person it designated under the process established by the Federal Rules did not know.

Contrary to BFG Defendants' argument, there is nothing "unduly harsh" about preventing them from arguing or offering into evidence testimony or other evidence of their expenses from the gray-market cameras other than the cost of goods sold.[5] This record positively screams "bad faith" and BFG Defendants have not even attempted to credibly claim otherwise in their opposition.[6]

### B. *Daubert* Motion

Federal Rule of Evidence 702 permits testimony by an expert witness "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." The proponent of the expert testimony has the burden of establishing, by a preponderance of the evidence, that the testimony is competent, relevant, and reliable. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-93, 592 n.10 (1993). To determine whether a proposed expert's testimony is admissible under Rule 702, the Court must therefore examine: (1) the proposed expert's qualifications; (2) whether the proposed testimony is relevant, that is, whether it would be helpful to the factfinder; (3) whether the proposed testimony is based on reliable data and methodologies. Id.

---

[5] Plaintiff's brief in support of this motion *in limine* sought an order precluding BFG Defendants from offering or attempting to offer evidence testimony or other evidence of the "disputed deductions," which plaintiff distinguished in its brief from the "cost of goods sold." In its reply, plaintiff appears to expand its request and ask the Court to preclude BFG Defendants "from using at trial any evidence of costs, whether through documents, fact witnesses, or expert testimony." As plaintiff's reply notes, it has "to date . . . taken the position that both the revenue and COGS numbers in the summary spreadsheet at issue may be accurate." The Court grants the relief plaintiff requested in its brief in support of the motion: BFG Defendants are precluded from offering evidence testimony or other evidence of any expenses except the cost of goods sold.

[6] BFG Defendants' second argument, that the sufficiency of the spreadsheet is a factual question for the jury, is also off the mark. It assumes that there are reliable facts that the jury could evaluate; the Court is granting plaintiff's motion because there are not.

As to the third of these three inquiries, the Court should consider whether the testimony is "grounded in sufficient facts or data" and is "the product of reliable principles and methods," and whether the witness "has applied the principles and methods reliably to the facts of the case." See Wills v. Amerada Hess Corp., 379 F.3d 32, 48 (2d Cir. 2004) (internal quotation marks omitted) (quoting Fed. R. Evid. 702). The Second Circuit has endorsed an especially broad standard for the admissibility of expert testimony, but even under that standard, "expert testimony should be excluded if it is speculative or conjectural." See Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996). A district court has broad discretion in deciding whether an expert's testimony is reliable under Daubert. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

Plaintiff's Daubert motion flows directly from its second motion *in limine*: Dr. Fishman's expert report is based on the summary spreadsheet for which BFG Defendants refused to produce the underlying data. Dr. Fishman testified repeatedly that he did not review any of the underlying data for the spreadsheet and instead relied on the numbers he was given by BFG Defendants to reach his conclusion. For example, he testified at his deposition (responding to plaintiff's counsel): "You have asked me five, six, ten times what the underlying math is but I didn't do the underlying math. I relied on the company. The company would be the best source of understanding what the math is behind the allocations. I relied on the company."

Dr. Fishman testified that he also relied on (1) the interrogatories and (2) the interrogatory responses, (3) the Amended Complaint, (4) his conversations with BFG Defendants' executives, and (5) the depreciation worksheet and (6) the workbook described above. The first and third of these are irrelevant, the second and fourth are meaningless because BFG Defendants' interrogatory responses are not substantive and Dr. Fishman did not identify

9

anything from his conversations that explained the cost allocation figures, and the fifth and sixth are, as explained above, unhelpful. As described above, Dr. Fishman also reviewed the company's SG&A, but he testified that he did not rely on it to reach the conclusion in his expert report. Thus, all of that purported evidence boils down to, as plaintiff points out, the summary spreadsheet that BFG Defendants' provided him, the numbers in which he accepted at face value. To permit Dr. Fishman to testify as an expert before the jury would be to allow BFG Defendants to present their unsupported opinions under the guise of Dr. Fishman's expertise. There is no reliable foundation for Dr. Fishman's testimony;[7] plaintiff's motion to preclude it under Rule 702 is granted.

### III. Plaintiff's Motion *in Limine* to Preclude All Defendants from Referring to Evidence Not Produced in Discovery Regarding Use of Disclaimers or Warranties (No. 3)

Plaintiff also moves to preclude all defendants from arguing, discussing, or introducing evidence not produced in discovery, including evidence about defendants' alleged use of disclaimers and warranties for gray-market cameras they sold.

Plaintiff details in its motion its document and interrogatory requests for copies and descriptions of disclaimers or warranties that defendants offered. Plaintiff argues (and defendants do not dispute) that they (1) did not produce any documents showing that they used disclaimers; (2) did not produce any warranty documents showing the warranty terms; (3) did not produce any documents showing that they consistently offer any warranties at all. Plaintiff argues that because BFG Defendants have the burden of proving the "disclaimer defense" and because they have failed to produce any documents showing the use of disclaimers, they should

---

[7] Without a foundation of reliable factual evidence, the rest of Dr. Fishman's report is immaterial. Approximately five of the seven pages of analysis in his report discuss his theory that the market for gray-market cameras is a perfectly competitive market, which he concludes is further support of the reliability of the modest profits he calculated the BFG Defendants to have received using the figures in the spreadsheet summary.

be prevented from introducing any documents or testimony about their use of disclaimers. (This disclaimer defense only applies to BFG Defendants because FLG Defendants did not raise it). As to warranties, plaintiff seeks a narrower category of relief: an order precluding any evidence that was not produced in discovery. (Plaintiff makes clear in its reply that it is only seeking in its motion to preclude any *new* warranty evidence or testimony, including any specific warranty terms that defendants have not already produced.)

As to plaintiff's request to preclude all evidence of disclaimers, including any testimony about them, the relief is granted in part and reserved in part. BFG Defendants do not identify any documentary evidence that they seek to introduce and have not explained why their failure to do so until now is "substantially justified" or "harmless" consistent with Rule 37(c). Defendants will not be permitted to introduce such evidence at trial.

As to precluding all *testimony* about disclaimers, the Court withholds ruling on that portion of the motion until trial. However, the Court notes that it sees significant hearsay and best evidence rule issues with a witness for BFG Defendants testifying about the existence of disclaimers when BFG Defendants never produced them. The rule against hearsay would certainly preclude a witness from testifying to any disclaimer's contents.

The same is true for the warranties: defendants may not introduce any new documents that they did not produce in response to plaintiff's requests and, although their witnesses are not categorically precluded from testifying about warranties, there may well be hearsay and best evidence rule problems with such testimony.

Contrary to BFG Defendants' arguments about evidence of warranties, plaintiff's request does not mean that it is skirting this Court's order denying plaintiff's motion for summary judgment. The Court concluded that there remained a genuine dispute of material fact about

whether the warranties plaintiff provides are materially different from (*i.e.*, superior to) those defendants provide, either by their terms or because defendants do not actually provide warranties at all. This genuine dispute exists because plaintiff did submit its warranty (or warranties) with its motion, so the Court had no way to determine whether they are materially different from defendants'. As described above, the request to preclude documents requested but not produced is entirely proper under Rule 37(c). BFG Defendants have not identified any other evidence that they seek to introduce nor explained why their failure to do so until now is "substantially justified" or "harmless."

FLG Defendants object to this motion on the ground that it is unnecessary – they argue that they do not seek to introduce any documents that were not produced in discovery. Plaintiff's motion to exclude any evidence it requested and that defendants did not produce is entirely proper given defendants' history of repeated non-compliance with discovery requests.

Defendants will have their day in court, but they will not be permitted to sandbag plaintiff with evidence plaintiff properly requested but which defendants never produced. Plaintiff's third motion *in limine* is granted in part and reserved in part as described in this section.

## CONCLUSION

Plaintiff's [185], [190] motions *in limine* and [189] <u>Daubert</u> motion are GRANTED. Plaintiff's [191] motion *in limine* is GRANTED IN PART AND RESERVED IN PART.
**SO ORDERED.**

                                                      U.S.D.J.

Dated: Brooklyn, New York
        September 4, 2018